## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| APEX LINEN SERVICE LLC, *et al.*,[1] | ) | Case No. 20-11774 (LSS) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

### MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (the "*Debtors*") seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "*Interim Order*" and "*Final Order*"), pursuant to sections 105(a), 363, 1107(a), and 1108 of title 11 of the United States Code Bankruptcy Code (the "*Bankruptcy Code*") and Rule 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"): (a) authorizing, but not directing, the Debtors to pay prepetition claims held by Critical Vendors (as defined herein), and (b) granting related relief (the "*Motion*"). In support of the Motion, the Debtors respectfully state as follows:

### JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Apex Linen Service LLC (9075), Highland Apex Holdings LLC (0537), Highland Avenue Capital Partners LLC (2825), Highland Apex GP LLC (9246), and Highland Apex Management LLC (5476). The location of the Debtors' corporate headquarters is 6375 S. Arville Street, Las Vegas, NV 89118.

of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"), the Debtors consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On July 6, 2020 (the *"Petition Date"*), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Cases*"). The Debtors are authorized to continue operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Cases.

3.      Additional information regarding the Debtors' businesses and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Christopher Bryan In Support of First Day Motions* (the "*Bryan Declaration*"), filed contemporaneously herewith and incorporated herein by reference.

## DEBTORS' CRITICAL VENDOR

4.      The Debtors' business depends on the uninterrupted flow of linens, cleaning chemicals, and other products and services. To that end, the Debtors rely on a number of third party vendors to provide them with the goods and services used in the operation of their businesses. While the Debtors believe that many of their vendors provide invaluable services, the Debtors and their advisors have carefully reviewed and analyzed the Debtors' books and records and consulted with key personnel to identify those vendors of goods and services that are absolutely critical to the Debtors' businesses (the "*Critical Vendors*," and such claims, the "*Critical Vendor Claims*").

The Debtors believe that the loss of goods or services provided by the Critical Vendors could immediately and irreparably harm their businesses, reduce their enterprise value and/or significantly impair their going-concern viability.

5.      Specifically, in identifying the Critical Vendors, the Debtors examined each of their vendor relationships with the following criteria in mind:

(a)   whether a vendor is a sole- or limited-source or high volume supplier or service provider;

(b)   whether alternate vendors exist to provide the same or similar goods or services on equal or better terms;

(c)   whether the Debtors could continue to operate while transitioning their business to a replacement vendor, taking into account the costs of replacing a vendor (including, pricing, transition expenses, professional fees and lost sales or future revenue) and the degree to which replacement costs exceed the amount of the vendor's prepetition claim;

(d)   whether a contract exists by which the Debtors could compel the vendor's continued performance on prepetition terms and, if so, whether the Debtors could enforce it in a timely, cost-efficient manner without the undue burden on, or disruption of, the Debtors' businesses and operations;

(e)   whether certain specifications and/or requirements unique to the Debtors' operations would prevent obtaining goods or services from alternate sources;

(f)   whether failure to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor;

(g)   whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship goods or to provide critical services on a postpetition basis; and

(h)   whether failure to pay a particular vendor could result in a contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

6.      In sum, the Debtors' selection process balanced the need to ensure that these chapter 11 cases do not disrupt their operations, adversely affect their market share, or injure their customer relationships, with the need to limit the expenditure of estate resources.

7.      Without the Critical Vendors, the Debtors cannot sustain the high-quality operations that they have worked for years to achieve and would be unable to continue serving their customers, likely losing significant revenue. If the Critical Vendors refuse to provide their goods and services to the Debtors after the Petition Date on account of unpaid prepetition claims, the Debtors would be left scrambling to procure new vendors. The process could take several months and would significantly impact to the Debtors' anticipated sales.

8.      The Debtors have narrowly tailored the relief sought in this motion to encompass only those vendors that truly provide critical goods or services that enable the Debtors to maintain their operations. The Debtors estimate that, as of the Petition Date, approximately $1.7 million was due and owing to the Critical Vendors of which approximately $325,000 will become due prior to the final hearing.

9.      In return for paying the Critical Vendor Claims either in full or in part, the Debtors propose that they be authorized to require that a Critical Vendor provides favorable trade terms for the postpetition procurement of goods and services from such Vendor Claimant. Accordingly, the Debtors seek the authority, but not direction, to enter into trade agreements setting forth customary trade terms (each, a "*Trade Agreement*") when the Debtors determine, in their sole discretion, that payment of the applicable Critical Vendor Claim, in whole or in part, is necessary to the Debtors' postpetition  operations. Such Trade Agreements, once agreed to and accepted by a Critical Vendor, shall be a legally binding contractual arrangement between the parties governing the commercial trade relationship as provided therein.

10.     The Debtors also seek authority, in their sole discretion when circumstances are appropriate, to pay the Critical Vendors in the event that no Trade Agreement has been executed if the Debtors determine, in their business judgment, that payment of the Critical Vendor Claim is

necessary for the preservation of the Debtors' estates and a formal Trade Agreement is unnecessary to ensure such Critical Vendor's continued performance on customary trade terms. If a Critical Vendor accepts payment under a Trade Agreement and thereafter does not continue to provide goods or services to the agreed upon trade terms during the pendency of these chapter 11 cases, then any payment on a prepetition claim received by such party shall be deemed to be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code.

## **BASIS FOR RELIEF**

**I.      The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.**

11.      Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts have approved payment of prepetition invoices of essential suppliers); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a bankruptcy court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as requested herein.

12.      Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so.  *See Ionosphere*

*Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor

to honor prepetition claims where supported by an appropriate business justification); *In re James*

*A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay

the prepetition claims of suppliers who were potential lien claimants). Indeed, courts have

recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the

preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D.

Tex. 2002).

13.     In addition, the Court may authorize payment of prepetition claims in appropriate

circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's

inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of this title." Under section 105(a), courts may authorize payments of

prepetition obligations prior to confirmation of a plan or emergence from chapter 11 when essential

to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825 (D. Del. 1999).

Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize

payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as

the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

14.     Indeed, the Third Circuit recognized the "necessity of payment" doctrine in *In re*

*Lehigh and New England Railway Co*. 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held

that a court could authorize the payment of prepetition claims if such payment was essential to the

continued operation of the debtor. *Id.* (stating courts may authorize payment of prepetition claims

when there "is the possibility that the creditor will employ an immediate economic sanction, failing

such payment"); *see also In re Penn Central Transp. Co*., 467 F.2d 100, 102 n.1 (3d Cir. 1972)

(holding necessity of payment doctrine permits "immediate payment of claims of creditors where

those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

15.    Allowing the Debtors to satisfy Critical Vendor Claims pursuant to all or some of the above-referenced provisions, is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code — preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999). Accordingly, the relief requested herein is appropriate and warranted under the circumstances. The authority to satisfy the Critical Vendor Claims in the initial days of these cases will maintain the integrity of the supply chain, facilitate the Debtors' operations and the Debtors' accounts receivable collection, and allow the Debtors to efficiently administer these chapter 11 cases without disrupting the Debtors' operations. Failure to pay the Critical Vendors Claims could potentially destroy value that would otherwise inure to the benefit of the Debtors' estates.  Further, absent the relief requested herein, it is likely that certain of the Critical Vendors will stop providing goods or services to the Debtors on customary trade terms, effectively reducing the amount of credit available to the Debtors. Further, the Debtors would be immediately forced to limit their offerings in the short term while they searched for substitute vendors, and might be forced to fulfill orders at a loss if the Debtors were forced to forego existing favorable trade terms. Avoiding such a scenario is vital to the Debtors' continuing operations and the success of these chapter 11 cases.

16.    Where, as here, debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this district have routinely authorized payments to

prepetition vendor claimants. *See, e.g.*, *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (authorizing the debtors to pay $14 million on account of critical vendors claims); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. July 23, 2019) (authorizing the debtors to pay $10.7 million on account of critical vendor claims); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (authorizing the debtors to pay $11.7 million on account of critical vendors).

17.    Based on these circumstances, the Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

## II.    Payment of Critical Vendor Claims Is in Furtherance of the Debtors' Fiduciary Duties under Sections 1107(a) and 1108 of the Bankruptcy Code

18.    Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of creditors and (if the value justifies) the equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of chapter 11 debtors in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

19.    Courts have noted that there are instances in which debtors in possession can fulfill their fiduciary duties "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," *id.*, and also when the payment was to "sole suppliers of a given product." *Id.* At 498. The *CoServ* court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

20.     Payment of the Critical Vendor Claims meets each element of the *CoServ* court's standard. First, as described above, the Critical Vendors provide goods and services that are critical to the Debtors' businesses. Second, the loss of goods or services provided by the Critical Vendor Claims could immediately and irreparably harm their businesses, reduce their enterprise value and/or significantly impair their going-concern viability. And, finally, with respect to each of the Critical Vendor Claims, the Debtors have determined that, to avoid significant disruption of the Debtors' operations, no practical or legal alternative to payment of the Critical Vendor Claims exists. Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code through payment of the Critical Vendor Claims.

21.     For all of the reasons stated above, the Debtors respectfully request that the Court authorize, but not direct, the payment of the Critical Vendor Claims as described herein.

## RESERVATION OF RIGHTS

22.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the interim order and final order is intended or shall be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume any agreement,

contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's interim order and final order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's right to subsequently dispute such claim.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

23.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

24.     Notice of this Motion has been provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the creditors holding the 20 largest unsecured claims against the Debtors' estates, as identified in the Debtors' chapter 11 petitions; and (c) all parties that have timely filed appearances pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and (b) grant such other and further relief as is just and proper.

Respectfully submitted,

Dated: July 8, 2020

**GOLDSTEIN & MCCLINTOCK, LLLP**

By: */s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk, Esq. (Bar ID 3320)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
Facsimile: (302) 444-6709
marias@goldmclaw.com

-and-

Harley J. Goldstein, Esq. (*pro hac vice pending*)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
Facsimile: (312) 277-2310
harleyg@goldmclaw.com

*Proposed attorneys for the Debtors and Debtors-in-Possession*