**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| APEX LINEN SERVICE LLC, *et al.*,[1] | ) Case No. 20-11774 (LSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Related to Docket Nos. 18, 30, 36, 68 and 74 |

## STIPULATED THIRD INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND SCHEDULING FURTHER INTERIM HEARING

Upon the supplemental motion (the "*Motion*")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "*Debtors*") for entry of orders pursuant to sections 361 and 363 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"): (1) authorizing the Debtors to use cash collateral; (2) scheduling a further interim hearing on the use of cash collateral; and (3) for other related relief as necessary; and the Court having considered the Motion and Declaration and statements of counsel; and it appearing to the Court that granting certain limited relief on the terms and conditions herein contained is necessary and essential to enable the Debtors to continue to operate their businesses pending a further interim hearing on the Motion; and good cause appearing therefor;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Apex Linen Service LLC (9075), Highland Apex Holdings LLC (0537), Highland Avenue Capital Partners LLC (2825), Highland Apex GP LLC (9246), and Highland Apex Management LLC (5476). The location of the Debtors' corporate headquarters, and the business address for Apex Linen Service LLC is 6375 S. Arville Street, Las Vegas, NV 89118. The business address for all other Debtors is 205 Pier Avenue, Suite 102, Hermosa Beach, CA 90254.

[2] Capitalized terms not defined herein shall have the meanings provided in the Motion.

**IT IS HEREBY ORDERED THAT:**

1. The Court authorizes the Debtors to use Cash Collateral only to the extent set forth in the Budget for the week beginning on July 25, 2020 and ending on July 31, 2020 attached hereto as **Exhibit 1** (the "*Interim Budget*"); provided that, with respect to critical vendor payments set forth in the Interim Budget, the Debtors shall not make such payments unless and until the Debtors have first provided to the Pre-Petition Lenders detailed information regarding the proposed payments to critical vendors reflected in the Interim Budget and the Pre-Petition Lenders have consented thereto, with the Pre-Petition Lenders' consent not to be unreasonably withheld. Cash Collateral shall first be used to pay payroll in full, followed by payment of other operating expenses in full. Thereafter, for any amounts set forth in the Interim Budget related to the Debtors' professionals, including the Debtors' Legal Fees, CRO Fees, Investment Banker Fees, and Claims Agent Fees (collectively, the "*Professional Fees*"), any Cash Collateral remaining after payment of payroll and other operating expenses in full shall be deposited into an escrow account (the "*Professional Fee Escrow*") to be managed by Jeff Nerland, the Debtors' Chief Restructuring Officer (the "*CRO*"); such Professional Fees being payable upon allowance or authorization by this Court from funds on deposit in the Professional Fee Escrow, *provided, however*, nothing herein prevents the Debtors' Professionals from seeking the Court's authority to be paid outside of the Professional Fee Escrow in the event that the amount paid by the Debtors in such period for the fees and expenses of the Debtors' professionals exceeds the amount in the Professional Fee Escrow at such time, *provided further* that the Pre-Petition Lenders reserve all rights and objections relating to (i) retention of the Debtors' professionals, and (ii) approval of compensation of the Debtors' professionals.

2. No other relief requested in the Motion is granted, and the Debtors and Pre-Petition Lenders reserve all of their rights and obligations with respect to such relief.

3. To the extent of any diminution in value of Pre-Petition Lenders' collateral, for which Pre-Petition Lender's shall have post-petition claims ("Adequate Protection Claims"), Pre-Petition Lenders shall receive and are hereby granted additional replacement security interests and liens in and to (i) all rents, profits, proceeds and other income from Pre-Petition Lenders' prepetition collateral, and (ii) all property of the estate of the same kind, type and nature as Pre-Petition Lenders' prepetition collateral that is acquired after the petition date, whether arising from Section 552(b) of the Bankruptcy Code or otherwise, and specifically including commercial tort claims and other causes of action (*but not including any causes of action arising under the Bankruptcy Code or any unencumbered cash of the Debtors existing as of the Petition Date; provided that the Debtors and Pre-Petition Lenders reserve all of their respective rights, arguments and contentions as to whether or not there was any unencumbered cash of the Debtors existing as of the Petition Date and nothing in this Order shall determine the issue one way or the other*), senior to any other security interests, liens, or encumbrances, subject only to valid, perfected, and enforceable prepetition liens which are senior to the Pre-Petition Lenders' respective liens or security interests as of the Petition Date, if any, and all rents, profits and other proceeds thereof.

4. As further adequate protection for any post-petition diminution in value, the Court hereby grants Pre-Petition Lenders administrative priority status for the Adequate Protection Claims pursuant to Section 507(b) of the Bankruptcy Code.

5. The post-petition liens and security interests granted to the Pre-Petition Lenders pursuant to this Order are perfected by operation of law *nunc pro tunc* from the Petition Date

without further action by the agent for the Pre-Petition Lenders (the "*Agent*"). The Agent may, but shall not be required to, file any Uniform Commercial Code financing statements and record any additional documents in any jurisdiction or take any other or further action to validate or perfect the security interests and liens granted to it pursuant to and in accordance with this Order, without any consent of Debtors and without any further order of the Court. If the Agent deems it necessary, Debtors shall execute and deliver to the Agent, or shall have executed and delivered to the Agent, all in form and substance satisfactory to the Agent, any other documents, instruments or writings to evidence the terms of this Order, the use of Cash Collateral and/or Pre-Petition Lenders' liens and security interests, and the Agent may request from time to time the execution and delivery of Uniform Commercial Code financing statements, continuation statements, amendments to financing statements, and any other instruments and/or documents relating to the use of Cash Collateral and/or the security interests and liens granted hereunder. Debtors shall execute all financing statements, amendments and other documents desired by the Agent for the perfection of the security interests and liens granted hereunder and Debtors agree to a lifting of the automatic stay for the limited purpose of carrying out the purposes of this paragraph. Furthermore, Debtors irrevocably authorize the filing of a carbon, photographic or other reproduction of this Order as a financing statement, and agree that such filing is sufficient as a financing statement subject to applicable state law. Nothing in this paragraph shall limit or otherwise derogate the perfection of the Pre-Petition Lenders' security interests in and lien by operation of law as provided for in this Order. All of the security interests in and liens granted hereunder are hereby deemed to be effective on and after the Petition Date, shall continue in full force and effect and shall survive the termination of Debtors' use of Cash Collateral and the dismissal or conversion of these cases.

6. The Pre-Petition Lenders shall not be prejudiced by the Debtors not maintaining the Pre-Petition Lenders' Cash Collateral in a separate bank account. To the extent that the Debtors believe that any cash is or was not the Pre-Petition Lenders' Cash Collateral, Debtors shall have the burden of proof on that issue.

7. The Debtors shall provide to the Agent (i) on or before July 28, 2020, an "actual to budget" reconciliation of all inflows and expenses listed in the Budget for the week ended July 24, 2020, (ii) on or before August 4, 2020, an "actual to budget" reconciliation of all inflows and expenses listed in the Budget for the week ended July 31, 2020, (iii) bank statements (if and when available), and (iv) proof of insurance coverage for the Pre-Petition Lenders' collateral.

8. The terms of this Order shall survive and be binding in the event of the appointment of a trustee, the dismissal, and/or conversion of the case, and shall survive the termination of Debtors' right to use Cash Collateral.

9. To the extent of any inconsistencies between the terms and provisions of this Order and the Pre-Petition Lenders' loan documents, the terms of this Order shall govern.

10. The following shall constitute events of default resulting in the termination of Debtors' right to use cash collateral: (i) conversion or dismissal (without the consent of the Pre-Petition Lenders) of any of the Debtors' cases, (ii) appointment of a trustee or examiner in any one or more of the cases, (iii) entry of any order granting relief from stay to proceed against any assets of any of the Debtors, (iv) Debtors exceed expenditures under the Interim Budget, (v) Debtors sell, outside of the ordinary course of business, or abandon any of their assets without Agent consent or Court approval, (vi) Debtors fail to maintain the insurance coverage required under Pre-Petition Lenders' loan documents, (vii) Debtors fail to pay any taxes when due, (viii) any of Pre-Petition Lenders' liens are primed (without Pre-Petition Lenders' consent), (ix) the Pre-Petition Lenders'

Cash Collateral is used by any of the Debtors for any purpose not approved herein, or (x) Debtors fail to comply with any provisions of the order.

11. There shall be no admission by the Pre-Petition Lenders that the protections provided in exchange for use of cash collateral are "adequate protection" under the Bankruptcy Code, and all parties-in-interest shall expressly reserve and not waive any rights on this issue, the value of their collateral, and all other issues.

12. Notwithstanding Bankruptcy Rule 7062, the terms and conditions of this Order shall: (a) be immediately enforceable pursuant to Bankruptcy Rule 4001(b)(2); and (b) not be stayed absent: (i) an application by a party in interest for such stay; and (ii) a hearing upon notice to the Debtors.

13. This Interim Order constitutes an interim order pursuant to Bankruptcy Rule 4001(b). Debtors' counsel shall contact chambers on July 27, 2020 to obtain a date for a ~~A further interim hearing on the Motion shall be held on ____, 2020 (the "Further Interim Hearing") in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedures.~~

14. ~~The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c)(2).~~ Within one business day after the Court's entry of this Interim Order, the Debtors shall serve copies of this Interim Order, ~~and notice of the Further Interim Hearing. Further, by July __, 2020, the Debtors shall file any further motion seeking use of cash~~ collateral, and shall serve such further motion by overnight mail or electronic mail to: (i) the Pre-Petition Lenders through their counsel, (ii) the United States Trustee, (iii) the Debtors' twenty (20) largest creditors, and (iv) ~~any~~ party having filed a request to receive service in the Chapter 11 Cases. ~~Any objections to the relief sought in any further cash collateral motion may be made by July __, 2020.~~

15.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.

16.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

        **LAURIE SELBER SILVERSTEIN**
        **UNITED STATES BANKRUPTCY JUDGE**

Dated: July 24, 2020
        Wilmington, Delaware

Apex Linen Service
Cash Flow- Working Copy

| | | NOTE | Projected 1 7/25 7/31 |
|---|---|---|---|
| 2 | Apex Linen Service | | |
| 3 | Cash Flow- Working Copy | | |
| 4 | WEEK BEGINNING: | | |
| 5 | ENDING: | | |
| 6 | Sources | | |
| 7 | Accounts Receivable Collections | 1 | $ 221,984 |
| 8 | DIP Proceeds | 2 | 0 |
| 11 | Total Sources | | 221,984 |
| 13 | Uses–Operating | | |
| 14 | Payroll | 3 | 304,886 |
| 15 | Payroll Executives | 4 | 0 |
| 16 | CFO | 5 | 3,750 |
| 17 | Union Pension | 6 | 0 |
| 18 | Other Staff Costs | 7 | - |
| 19 | Plant Utilities | 8 | - |
| 20 | Repairs/Maintenance | 9 | 2,500 |
| 21 | Parts Expense | 10 | 0 |
| 22 | Supplies/Chemicals | 11 | 5,000 |
| 23 | Covid Materials | 12 | 500 |
| 24 | Vehicle Costs | 13 | 0 |
| 25 | Rent | 14 | 0 |
| 26 | Bank/Merchant Fees | 15 | 0 |
| 27 | Office | 16 | 0 |
| 28 | Commercial Insurance | 17 | 0 |
| 29 | D & O Insurance | 18 | 0 |
| 30 | Auto Insurance | 19 | 0 |
| 31 | Legal - labor | 20 | 0 |
| 32 | Taxes & Licenses | 21 | 0 |
| 33 | G & A Misc. | 22 | 1,000 |
| 34 | Critical Vendors | 23 | 2,500 |
| 35 | Non Critical Vendors | 24 | 0 |
| 36 | Onboarding New Customers | 25 | 0 |
| 37 | Linen replacement | 26 | 0 |
| 38 | OSHA Claim | 27 | 0 |
| 39 | Other | 28 | 0 |
| 41 | Total Operating Uses | | 320,136 |
| 43 | Net Activity from Operations | | (98,152) |
| 45 | Uses-Bankruptcy Related | | |
| 46 | Legal Fees | 29 | 150,000 |
| 47 | CRO Fees | 30 | 52,500 |
| 48 | Investment Banker | 31 | 50,000 |
| 49 | DIP Fees | 32 | 0 |
| 50 | Claims Agent | 33 | 10,000 |
| 51 | UCC | 34 | 0 |
| 52 | US Trustee Fees | 35 | 0 |
| 54 | Total Bankruptcy Related | | 262,500 |
| 56 | Total Uses | | 582,636 |
| 58 | Net activity including DIP draw | | (360,652) |
| 60 | Beginning cash (per books) | | 360,859 |
| 62 | Ending cash (per books) | | 207 |

7/24/2020 10:04 AM

1 of 2

APEX - CFW 7-24-20 -v1

| | B | C | F |
|---|---|---|---|
| | | | **Projected** |
| | | | 1 |
| | | | 7/25 |
| | | | 7/31 |
| 63 | | | |
| 65 | | | |
| 66 | | | |
| 67 | | | |
| 68 | | | |
| 69 | | | |
| 70 | | | |
| 71 | Accounts Receivable RF | | |
| 72 | Beginning Balance | | 521,006 |
| 73 | Sales | | 202,150 |
| 74 | Receipts | | (221,984) |
| 75 | Ending Balance | | 501,172 |
| 76 | | | |
| 77 | DIP Loan | | |
| 78 | Beginning Balance | | - |
| 79 | Draws | | - |
| 80 | Payments | | - |
| 81 | Ending Balance | | - |
| 82 | | | |
| 83 | | | |
| 84 | | | |
| 85 | | | |
| 86 | Apex Linen Service | | **Projected** |
| 87 | Cash Flow- Working Copy | | 1 |
| 88 | WEEK BEGINNING: | | 7/25 |
| 89 | ENDING: | | 7/31 |
| 90 | | | |
| 91 | Beginning Cash | | 360,859 |
| 92 | | | |
| 93 | Total Sources | | 221,984 |
| 94 | | | |
| 95 | Uses-Operating | | |
| 96 | Payroll | | 308,636 |
| 98 | Plant | | 8,000 |
| 99 | G & A | | 1,000 |
| 100 | CGS | | 2,500 |
| 101 | Other | | 0 |
| 106 | | | |
| 107 | Total Operating Uses | | 320,136 |
| 108 | | | |
| 109 | Net Activity from Operations | | (98,152) |
| 110 | | | |
| 111 | | | |
| 112 | Bankruptcy Related | | 262,500 |
| 113 | | | |
| 114 | Net activity | | (360,652) |
| 115 | | | |
| 116 | Beginning cash (per books) | | 360,859 |
| 117 | | | |
| 118 | Ending cash (per books) | | 207 |